IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHEN DSTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KATHRYN GREEN, INDIVIDUALLY and as REPRESENTATIVE of the ESTATE OF PATRICK GREEN, DECEASED, and DAVD GREEN,<br><br>Plaintiffs,<br><br>V.<br><br>HARRIS COUNTY, TEXAS, CARISSA YORK, R.N., INDIVIDUALLY, and JOHN DOE JAIL STAFF 1-20, INDIVIDUALLY,<br><br>Defendants. | CIVIL ACTION NO.:4:16-cv-<br><br>PLAINTIFFS' ORIGINAL COMPLAINT<br><br>(JURY TRIAL) |

**PLAINTIFFS' ORIGINAL COMPLAINT**

NOW COME Plaintiffs, Kathryn Green, Individually and as representative of the Estate of Patrick Green, Deceased, and David Green, and file this original complaint complaining of Defendants, Harris County, Texas, Carissa York, R.N., and John Doe Jail Staff 1-20, individually, and will show the Court the following:

### I. JURISDICTION AND VENUE

1. This Court has jurisdiction over Plaintiffs' federal claims, under 28 U.S.C. §§ 1331 and 2201, 42 U.S.C §§1983 and 1988, and supplemental jurisdiction under 28 U.S.C. § 1367(a), to hear Plaintiffs' state law claims, if any.

2. Venue is proper in this Court under 28 U.S.C. § 1391(b) because the incidents at issue took place in Harris County, Texas, within the United States Southern District of Texas.

## II. PARTIES

3. Plaintiff, Kathryn Green, is a resident of Fort Bend County, Texas.

4. Plaintiff, David Green, is a resident of Fort Bend County, Texas.

5. Defendant, Harris County, Texas is a governmental body existing under the laws of the State of Texas and may be served with process by serving the County Judge of Harris County, Ed Emmett, at 1001 Preston, Houston, Texas 77002.

6. Defendant, Carissa York, R.N., individually, is a nurse employed or contracted by Harris County Sheriff's Office and/or Correctional Health Services at Harris County Sheriff's Office and may be served with process at 133 Lasso, Angleton, TX 77515.

7. Defendants, John Doe Staff 1-20, individually, are identified as the unnamed guards, detention officers and other employees and contractors at the Harris County Jail who demonstrated deliberate indifference to the serious medical needs of Patrick Green and who will be served with process after they are identified.

## III. FACTS

8. Patrick Green (hereinafter, sometimes referred to as "Patrick") was born March 25, 1987. Kathryn Green and David Green are the parents of Patrick Green.

9. Patrick is a 2005 graduate of Incarnate Word Academy, Corpus Christi, Texas. During high school he was co-captain of the tennis team, played baseball, was a member of the band where he played the trumpet. Patrick graduated from Baylor University in 2009 with BA degree in film and digital media. While there, he played intramural rugby and enjoyed playing guitar at a local coffee shop. He was also a member of the Knights of Columbus, an organization of

Catholic men.

10.     On December 31, 2014, Patrick was arrested and taken to the Harris County Jail.  Patrick was housed at the jail at 701 San Jacinto, Houston, Harris County, Texas, from December 31, 2014, until his death.

11.     Patrick was housed in a "pod" which held approximately 25 inmates. There were four pods on the floor. In the center of the floor was the "picket," where one or more guards were placed to observe the inmates on the floor, and among other duties, respond to their requests.

12.     Along with other inmates in the pod, Patrick became a trustee at the Harris County Jail at 701 San Jacinto and he worked in the laundry room on the shift that started at 2:00 p.m.

13.     The pod was extremely filthy and not cleaned on any regular schedule until after Patrick's death. The tables were rusty. There was orange and yellowish grime and filth in the showers and on the toilet and water fountain.  Black dirt and mold-like material was coating the air vents and other areas.

14.     At least by Sunday, March 22, 2015, Patrick started feeling badly and was not talking, moving or eating much, was very cold, and his lips and fingers were turning blue. It was obvious to Harris County correctional officers and others that Patrick was the only inmate who did not eat, or left most of the food, on his tray in the days preceding his death.

15.     Patrick's bunk was close to the wall, which was composed of clear glass-like material, and near the door to the pod. The door to the pod was also of clear glass-like material. Thus, Patrick was visible to the correctional officers and others who were situated in the "picket," whose job it was to observe the inmates in the pods around the picket.

16. Monday morning, March 23, 2015, Patrick could not get up to go to his work as a trustee, and he did not report for work. He appeared groggy, in an altered mental state, still had not eaten and could not move or speak well.

17. Because every inmate in the pod was on the same 2:00 p.m. laundry shift, this left Patrick clearly visible not only to the guard in the picket, but also to several other guards because trustees are escorted by guards to and from their work in the laundry. All guards could have seen that Patrick was alone in his bunk, very ill, and not reporting for work in the laundry. When the inmates got to the laundry room, the guards in the laundry asked about Patrick and the other inmates said he was very sick. None of these correctional officers did anything to get medical care for Patrick.

18. Further, several jail guards observed Patrick throughout the day laying in his bunk clearly very ill. When the other inmates from the pod arrived in the laundry room, the guards there asked about Patrick. The other inmates who were trustees reported to the guards in the laundry that Patrick was very sick. Upon information and belief, no one checked on Patrick in his bunk.

19. Later in the day on March 23, 2015, Patrick was much worse, still lying on his bunk and moaning. Patrick had not moved at all from the way he was lying on his bunk in the morning and could barely move. Again, Patrick was the only inmate not eating and leaving most of the food on his tray.

20. At least one inmate tried to get medical attention for Patrick by requesting assistance and buzzing for the guard in the picket, however, the buzzer was ignored by the jail guards.

21. Upon information and belief, no one ever responded to the inmate requests. Furthermore, upon information and belief, other inmate request forms are ignored and not acted upon or acted upon after several days.

22.     On Tuesday, March 24, 2015 again Patrick was still very ill and not eating or moving. His voice was nearly incoherent. During the day on Tuesday before going to work in the laundry, an inmate buzzed the guard in the picket. Again, no one came. At least one jail guard, detention officer or deputy observed Patrick during the day on Tuesday. Again, Patrick did not eat any of the food on his tray, did not report to work in the laundry and, again, no one came to inquire about his inability to report to work or his condition.

23.     Later in the morning on March 24, 2015, before the trustees were escorted to work in the laundry, Patrick tried to get to the water fountain, but was stumbling. A cellmate tried to help Patrick and observed he was wholly incoherent. Patrick was pale, could not stand on his own, could not talk, had not eaten or moved all day, and he "had black rings under his eyes." At least two inmates again buzzed the jail guards, however, the guards ignored the buzz and paid no attention.

24.     Around this time, which upon information and belief, was approximately 12:00 noon, several inmates started banging on the glass walls between the pods and the picket. Two of Patrick's cellmates held Patrick up to the glass to show the guards in the picket how ill Patrick was, and they pounded on the glass wall to get the attention of the personnel in the picket, continuing to buzz for help. No one entered the pod to attend to Patrick. He then collapsed onto the floor.

25.     After about 15 minutes, two guards came into the pod. One guard approached Patrick, who was lying motionless on his bunk, and kicked Patrick four to five times in the right shoulder. Patrick did not respond. The inmates in the pod pleaded with the guard to stop kicking Patrick, telling him again that Patrick was very sick. After another 20-25 minutes passed, a stretcher came. Patrick's wrists and ankles were handcuffed to the stretcher, and he was taken away.

26. Upon information and belief, Patrick was taken to jail clinic at 701 San Jacinto sometime shortly after 12:00 noon. Also upon information and belief, Patrick received no medication or other treatment. Patrick arrived at the jail clinic unresponsive.

27. Carissa York, R.N. was on duty at the 701 San Jacinto jail clinic. Despite Patrick's unresponsiveness, Nurse York did not call for an ambulance for many hours. Nurse York noted to emergency medical service ("EMS") personnel that there had been other incidents of altered mental state in the prior two weeks of March 2015.

28. At approximately 8:46 p.m., EMS arrived at the jail clinic. The emergency personnel, along with Deputies S. Beard and B. Banks who reportedly provided security, departed the jail clinic at approximately 9:09 p.m., arriving at Ben Taub Hospital at 9:14 p.m. While EMS arrived at the jail using lights and sirens they did not use lights and sirens on the way to Ben Taub.

29. Patrick went to cardiac arrest at approximately 11:20 p.m., and was pronounced dead at 11:59 p.m.

30. The Harris County Medical Examiner determined that Patrick's cause of death was acute bacterial meningitis.

31. From 2009 to 2015 seventy (70) inmates died at the Harris County Jail.

32. In February 2013, Cedric Collins Jr. died in the Harris County Jail, despite the cause of death being visible, noticeable blunt force trauma from being injured in an automobile accident just prior to his death and arrest. Jail guards and jail staff observed that Mr. Collins was injured before his death, yet they failed to give medical care or take him to a hospital.[1]

33. Norman Hicks, 72, a retired butcher, had been in the Harris County Jail about ten days

---

[1] Houston Chronicle (and continuing paragraphs).

when other inmates pleaded with jailers to have him transferred to the mental health unit. Hicks had been placed in general population for violating probation in a family violence case even though intake workers determined he suffered from a combination of severe mental problems: bipolar disorder and schizophrenia. The inmates worried that Hicks might be killed by others he annoyed.

34. Hicks died after being punched by a jail guard involved in 11 previous use-of-force incidents. The Harris County Medical Examiner ruled the 2011 death a homicide. Jail guard, Pool, had slugged Hicks in the face breaking face bones. Hicks fell and hit his head. Pool stared at Hicks, who was not speaking or moving, according to an account he gave investigators, then left for the jail clinic to clean himself. Other jailers locked the door, and no one alerted supervisors or medical staff. When a jail sergeant noticed Hicks a half-hour later, he was not breathing. Pool described the blow delivered to Hicks as a routine event in the Harris County jail.

35. In 2009, the United States Department of Justice concluded after its own year-long investigation that inmates' constitutional protections had been violated by excessive violence and by substandard medical care that led to an "alarming" number of prisoner deaths.

36. In 2015, then Sheriff Adrian Garcia fired six supervisors, suspended 29 jailers and demoted a major for a neglect case involving a mentally disturbed inmate, Terry Goodwin. Initially jailed for marijuana possession, he was later found incompetent to stand trial. A state jail compliance team discovered in 2013 that after he had assaulted a county psychiatric worker, Goodwin had been left unattended for weeks, surrounded by bug-infested food containers in a cell with a feces-clogged toilet. A grand jury in April indicted two of the six fired supervisors for falsifying jail logs to indicate that Goodwin was in good condition, despite essentially abandoning his care.

37. Detention officers' starting pay is $18 per hour, less than any other county worker except entry level clerks, and minimum age is 18. The guards are forced to work mandatory overtime. Jailers need only 92 hours of training, which they must complete within a year. Jail new-hires complete training online.

## IV. WITHHOLDING OF RECORDS

38. Defendant Harris County has blocked release of Patrick Green's autopsy report from the Harris County Institute of Forensic Science by claiming there is an ongoing investigation.

39. Additionally, Plaintiffs attempted to obtain Patrick's jail records, including medical records, from the Harris County Sheriff's Office, however, Defendant Harris County, refused to provide any records. Plaintiffs were refused records from the Texas Commission on Jail Standards.

## V. CAUSES OF ACTION—42 U.S.C. SECTION 1983
## CRUEL AND UNUSUAL PUNISHMENT

40. Plaintiffs incorporate by reference all of the preceding paragraphs.

41. Defendants were acting under color of state law; the defendants are liable under 42 U.S.C. § 1983. The Defendants are liable under Section 1983 because they deprived Patrick Green of constitutional rights provided by federal law that occurred under color of state law, and were caused by a state actor.

42. Patrick Green had a right under the Eighth Amendment and the Due Process Clause while incarcerated to be free from deliberate indifference to his serious medical needs. The Defendants treated Patrick with deliberate indifference to his serious medical need especially for treatment

of bacterial meningitis. Defendants' violations of Patrick Green's constitutional rights resulted from a policy, pattern, custom and/or practice of deliberate indifference to the serious medical needs of inmates.

## VI. PUNITIVE DAMAGES

43. Plaintiffs request punitive damages against each individually-named defendant.

## VII. ATTORNEY'S FEES

44. Plaintiffs are entitled to recover attorneys' fees and costs under 42 U.S.C. §,§ 1983 and 1988.

## VIII. JURY TRIAL

45. Plaintiffs demand trial by jury on all issues triable to a jury.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests that the Court:

A. Enter judgment and award damages for Plaintiffs against the Defendants, jointly and severally;

B. Find that Plaintiffs are the prevailing parties in this case and award attorneys' fees and costs and all litigation expenses, pursuant to federal and state law, as noted against the Defendants;

C. Award pre- and post-judgement interest;

D. Award punitive damages against all individually named Defendants and for

Plaintiffs;

E.         Award costs of court; and,

F.         Grant such other and further relief as appears reasonable and just, to which,

Plaintiffs shows themselves entitled.

                RESPECTFULLY SUBMITTED,
                LAW OFFICE OF RANDALL L KALLINEN PLLC

*/s/ Randall L. Kallinen*
Randall L. Kallinen
State Bar of Texas No. 00790995
U.S. Southern District of Texas Bar No.: 19417
511 Broadway Street
Houston, Texas 77012
Telephone:    713.320.3785
Fax:               713.893.6737
E-mail:          AttorneyKallinen@aol.com
Attorney for Plaintiffs

11