UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KATHRYN GREEN, *et al*, | § § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. H-16-893 |
| | § | |
| HARRIS COUNTY, TEXAS, *et al*, | § § | |
| Defendants. | § § | |

## **MEMORANDUM AND ORDER**

Pending are Harris County's Motion to Dismiss [Doc. No. 265] and Motion to Quash Deposition of Adrian Garcia and for a Protective Order [Doc. No. 266]. The Court has carefully considered the pleadings, motions, responses, replies, and applicable law, and concludes as follows.

**I.      BACKGROUND**

The background facts and allegations of the Plaintiffs were set forth in the Court's August 13, 2018 Memorandum and Order and need not be repeated in detail here. [*See* Doc. No. 245].

The procedural history of this case warrants a more detailed discussion, however. On April 3, 2016, Plaintiffs Kathryn Green, Individually and as the Representative of the Estate of Patrick Green and David Green ("Plaintiffs") filed this civil rights lawsuit after David and Kathryn's son, Patrick, died while in custody at the Harris County Jail ("Jail"). [Doc. No. 1 ("*Green I*")]. The case initially named Harris County, Texas, Carissa York, R.N., individually, and John Doe Jail Staff 1-20, individually, as defendants. [*Id.*] On June 6, 2016, Plaintiffs filed

their First Amended Complaint, naming Harris County, Texas, and John Doe Jail Staff 1-20, individually. [Doc. No. 8]. On March 23, 2017, Plaintiffs filed a motion for leave to file a Second Amended Complaint in *Green I*. [Doc. No. 60]. That same day, Plaintiffs filed a second civil rights lawsuit alleging identical claims as in their proposed Second Amended Complaint against nearly identical defendants. *See Green v. Garcia, et al.*, Civ. A. No. H-17-905 (S.D. Tex. 2017) ("*Green II*"). Both *Green II* and the proposed Second Amended Complaint in *Green I* name the following defendants: Former Harris County Sheriff Adrian Garcia ("Sheriff Garcia" or "Garcia"), Harris County Detention Officer Warner Dean Irvin in his individual capacity, numerous other named jail officers in their individual capacities and named medical staff in their individual capacities, an unknown nurse in her individual capacity, and Staff Care, Inc., a wholly owned subsidiary of AMN Healthcare Services. *Green II* at Doc. No. 1; *Green I* at Doc. No. 73. The Second Amended Complaint in *Green I* names Harris County as a defendant, whereas the Complaint in *Green II* does not. *Cf. Green I* at Doc. No. 73 ("SAC") *with Green II* at Doc. No. 1.

On June 25, 2017, Plaintiffs requested the issuance of summons as to all defendants in *Green II*, including Garcia. *See Green II* at Doc. No. 3-5. The summons for Garcia listed "1200 Baker Street, Houston, Texas, 77002" but there is no record of any summons being issued to Garcia at his home address.[1] *See Green II* at Doc. No. 3. On July 28, 2017, Harris County filed "Official Capacity Defendant Former Harris County Sheriff Adrian Garcia's Motion to Dismiss" in *Green II*, asserting that Sheriff Garcia had been sued in his official capacity only and seeking dismissal of those claims because they were in actuality claims against Harris County. *Green II*

---

[1] The parties do not dispute that 1200 Baker Street is the address for the Harris County Sheriff's Office and that, at the time summons was issued on June 25, 2017, Adrian Garcia was no longer Harris County Sheriff. To the extent such is necessary, the Court takes judicial notice of these facts.

at Doc. No. 9 at 2, 3. On August 1, 2017, *Green II* was consolidated into *Green I*. *See Green II* at Doc. No. 13.

On September 21, 2017, Plaintiffs filed a response to Harris County's motion to dismiss official capacity defendant Sheriff Garcia (filed in *Green II*) in *Green I*. *Green I* at Doc. No. 151. In their response, Plaintiffs contend that they are suing Garcia in his individual capacity and that the omission of the terms "in his individual capacity" from the Second Amended Complaint in *Green I* and the Original Complaint in *Green II* "was an oversight." *Id.* at 7, 11.[2] The record indicates that Plaintiffs did not seek leave to amend to clarify the capacity in which they were bringing claims against Garcia and that they did not request summons to be issued to Adrian Garcia at his home address. There is no record of return of service of summons from Adrian Garcia at any address nor waiver of service being filed on Garcia's behalf.

On August 13, 2018, the Court conditionally dismissed numerous individual defendants and Staff Care, Inc. for failure to state a claim or for failure to serve and denied all of the pending motions in *Green II* as moot. [Doc. No. 245]. In that same Order, the Court granted Plaintiffs' motion for leave to amend and allowed Plaintiffs twenty-one (21) days to re-plead to cure defects in the Second Amended Complaint or to show cause why certain defendants had not been served with process. [*Id.*]. Plaintiffs did not re-plead to cure the deficiencies in their Second Amended Complaint, nor did they seek leave for an extension of time to serve the other defendants who had not yet been served. The dismissals became final on September 26, 2018. [Doc. No. 253].

On November 14, 2018, the Court overruled the remaining objections to the Magistrate Judge's Orders and ordered the parties to submit a Jail Inspection Protocol within twenty-one (21) days. [Doc. No. 260]. On December 13, 2018, Harris County filed a "Motion to Dismiss

---

[2] Unless otherwise indicated, citations to the pleadings refer to the pagination stamped on the CM/ECF system.

for Failure to State a Claim under *Kentucky v. Graham*, or in the alternative, for Failure to Serve under Rule 4." [Doc. No. 265]. Harris County moves for dismissal of the claims against Adrian Garcia, contending that: (1) all claims against Garcia in his official capacity must be dismissed as duplicative of claims against Harris County; (2) Plaintiffs failed to name him in his individual capacity in any of their pleadings; (3) Plaintiffs have not served Garcia individually; and (4) even if Plaintiffs had named Garcia individually and served him properly, they fail to state a claim against Garcia in his individual capacity as a supervisory defendant.

Plaintiffs do not dispute that, if they had sued Sheriff Garcia in his official capacity, those claims would be duplicative of claims against Harris County. They do not argue that they properly served Garcia in his individual capacity, but contend that (1) the omission of "individual capacity" regarding Garcia was an unintended oversight; (2) Garcia has appeared in this case because Harris County filed motions to dismiss him in his official capacity and "Defendants" filed a Joint Designation of Experts; and (3) they have alleged sufficient facts to state a claim against Garcia in his individual capacity. [Doc. No. 273].

Harris County has also filed a motion to quash and for a protective order, contending that former Sheriff Adrian Garcia is an "apex witness" and that any deposition of Harris County officials should follow Federal Rule of Civil Procedure 30(b). [Doc. No. 266]. Harris County seeks a protective order under Rule 26(c) prohibiting Plaintiffs from noticing another deposition to Garcia until Plaintiffs complete depositions of Harris County's Rule 30(b)(6) witnesses. The discovery period ends January 31, 2019, and docket call is set for 1:30 p.m. on April 9, 2019.

## II. LEGAL STANDARDS

### A. Motion to Dismiss for Failure to Serve

A 12(b)(5) motion turns on the legal sufficiency of the service of process. Fed. R. Civ. P.

12(b)(5). Once the validity of service of process has been contested, the plaintiff bears the burden of establishing its validity. *Holly v. Metro. Transit Auth.*, 213 F. App'x 343, 344 (5th Cir. 2007) (citing *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992)). A district court has broad discretion to dismiss an action pursuant to Rule 12(b)(5) for insufficient service of process, *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 645 (5th Cir. 1994), and dismissal is reviewed for abuse of discretion. *Lindsey v. United States R.R. Ret. Bd.*, 101 F.3d 444, 445 (5th Cir. 1996). Ordinarily, "when a court finds that service is insufficient but curable, it generally should quash the service and give the plaintiff an opportunity to re-serve the defendant." *Gregory v. U.S./U.S. Bankr. Court for Dist. of Colorado*, 942 F.2d 1498, 1500–01 (10th Cir. 1991) (citation and quotation marks omitted). However, when service would be futile, dismissal is appropriate. *Id.*

Under Federal Rule of Civil Procedure 4(m), a district court must dismiss a case without prejudice if a defendant has not been served within 90 days after the filing of a complaint or order that service be made within a specific time. Fed. R. Civ. P. 4(m). If a plaintiff can establish good cause for failing to serve a defendant, the court must allow additional time for service. *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996). To establish good cause, a plaintiff has the burden of demonstrating "*at least* as much as would be required to show excusable neglect" and "simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice." *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1306 (5th Cir. 1985) (emphasis in original). In addition, "some showing of good faith on the part of the party seeking an enlargement *and* some reasonable basis for noncompliance within the time specified is normally required." *Id.* (citation and internal quotation marks omitted). The plaintiff bears the burden to show good cause for the failure to effect timely service. *Thrasher v. City of Amarillo*,

709 F.3d 509, 511 (5th Cir. 2013).

### B. <u>Motion to Dismiss for Failure to State a Claim</u>

Rules 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure authorizes the filing of a motion to dismiss a case for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6), 12(c). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of its entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation omitted). A plaintiff must allege sufficient facts to state a claim to relief that is "plausible" on its face. *Id.* at 569. A claim is facially plausible when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Conclusory allegations and unwarranted factual deductions will not suffice to avoid a motion to dismiss. *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). In ruling on a Rule 12(b)(6) motion, "courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum Inc..*, 78 F.3d 1015, 1017 (5th Cir.1996).

### C. <u>Eighth Amendment Deliberate Indifference to Medical Needs</u>

The Eighth Amendment's prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97,

104-05 (1976). To state a claim for deliberate indifference, a plaintiff must plead facts to show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002); *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002). Deliberate indifference requires a showing that the official was subjectively aware of an objectively serious risk and that his response to that risk was unreasonable. *See Farmer*, 511 U.S. at 829, 834, 837, 839, 844-45.

"Deliberate indifference is an extremely high standard to meet" because a plaintiff must demonstrate that the defendants "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would evince a wanton disregard for any serious medical need.'" *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). A delay in medical care can rise to the level of a constitutional violation only if the delay is occasioned by deliberate indifference resulting in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

An inmate's dissatisfaction or disagreement with the medical treatment he received, or a claim that the treatment was negligent or even the result of medical malpractice, does not in itself state a claim for deliberate indifference in violation of the Eighth Amendment. *See, e.g., Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (holding that assertions of inadvertent failure to provide medical care or negligent diagnosis are insufficient to state a claim); *Norton v. Dimazana*, 122 F.3d 286, 291-92 (5th Cir. 1997) (holding an inmate's dissatisfaction with the medical treatment he receives does not mean that he suffered deliberate indifference); *Varnado v. Lynaugh*, 920

F.2d 320, 321 (5th Cir. 1991) (holding inmate's "disagreement with his medical treatment" was insufficient to show Eighth Amendment violation); *Fielder v. Bosshard,* 590 F.2d 105, 107 (5th Cir. 1979) (finding "[m]ere negligence, neglect, or medical malpractice is insufficient" to show Eighth Amendment violation); *Wagner v. Bay City,* 227 F.3d 316, 324 (5th Cir. 2000) ("the subjective intent to cause harm cannot be inferred from a . . . failure to act reasonably"). "The legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants." *Johnson,* 759 F.2d at 1238.

### III. DISCUSSION

#### A. Motion to Dismiss Official Capacity Claims

To the extent that Sheriff Garcia was sued in his official capacity, all parties agree that such a suit is, in all respects except name, a suit against Harris County. *Kentucky v. Graham,* 473 U.S. 159, 165 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," and not as a suit against the official personally, "for the real party in interest is the entity."). Accordingly, the official capacity claims against Garcia are **DISMISSED** without prejudice as duplicative of the claims against Harris County.

#### B. Motion to Dismiss for Failure to Serve

Plaintiffs do not contend that they ever properly served Garcia in his individual capacity but contend that he made an appearance in his case when Harris County moved to dismiss official capacity claims against him and when unspecified "Defendants" filed their designation of experts. Harris County maintains that its motions to dismiss the official capacity claims against Garcia do not constitute an appearance, nor did the filing of Defendants' Joint Designation of Experts, which was filed after the motion to dismiss asserting a lack of jurisdiction for failing to

serve Garcia in his individual capacity.

Although Plaintiffs acknowledge that they did not designate the capacity in which they are suing Garcia in their Second Amended Complaint in *Green I* and their Complaint in *Green II*, they call this omission an "oversight" and point out that a party's capacity "need not be pled except to the extent required to show the jurisdiction of the court" because it is "merely a formal error and not a fatal defect." *Parker v. Graves*, 479 F.2d 335, 336 (5th Cir. 1973) (citing Fed. R. Civ. P. 9(a)). Instead, a court examines the allegations in the complaint in order to determine the nature of a plaintiff's cause of action. *Id.* As discussed at length in section III.C., *infra*, the nature of the claims against Sheriff Garcia sound in his official capacity as claims against Harris County rather than Garcia's individual capacity.

Plaintiffs further assert that Harris County (and presumably Sheriff Garcia) should have assumed or known that they intended to sue Garcia in his individual capacity because they named both Harris County and Former Sheriff Garcia in the Second Amended Complaint, which would be duplicative if the claims against Garcia were official capacity claims. However, the four pleadings in *Green I* and *Green II* do not suggest, on their own, that Garcia or Harris County should have inferred that Plaintiffs were suing Garcia in his individual capacity: in *Green I*, Plaintiffs **do not** list Garcia as a defendant until they file their Second Amended Complaint, and, in *Green II*, they omit Harris County as a defendant entirely. *Cf. Green I* at Doc. No. 1, 8 & 73 *with Green II* at Doc. No. 1. Thus, there is no force to Plaintiffs' contention that Harris County and Garcia should have inferred from the pleadings alone that they were pursuing individual capacity claims against Garcia when they named him instead of Harris County in *Green II* and assert only Harris County policy-based allegations against him in *Green I* and *Green II*.

Plaintiffs point out, however, that they clearly state their intention to sue Garcia in his

individual capacity in their September 21, 2017 response, filed in *Green I*, to Harris County's Motion to Dismiss Official Capacity Defendant Adrian Garcia (*i.e.*, Harris County) filed in *Green II*. [Doc. No. 151]. Yet, the record does not reflect that Plaintiffs attempted to serve Garcia after they were notified that Harris County did not accept service on behalf of Garcia individually and that Harris County considered the claims to be official capacity claims against Harris County and not against Garcia individually.

Nonetheless, Plaintiffs contend that Harris County's motions to dismiss Garcia in his official capacity (one filed in *Green II* [Doc. No. 13] and the pending motion [Doc. No. 265] in *Green I*), and the "Defendants" Joint Designation of Experts [Doc. No. 272] constitute appearances by Garcia in his individual capacity. First, because Garcia does not control the litigation of the official capacity claims that Harris County sought to have dismissed, the motions filed by Harris County to dismiss Garcia *in his official capacity* did not constitute an appearance by Garcia that would waive service of process *in his individual capacity*. *See, e.g., Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n. 55 (1978) (noting that a suit against a government official in his official capacity is "only another way of pleading an action against an entity of which [the official] is an agent."); *see also Bennett v. Pippin*, 74 F.3d 578, 584 (5th Cir. 1996) ("When a plaintiff sues a county or municipal official in her official capacity, the county or municipality is liable for the resulting judgment and, accordingly, may control the litigation on behalf of the officer in her official capacity.").

Second, the record reflects that Harris County asserted that Plaintiff had failed to serve Garcia and that Garcia had not been sued in his individual capacity before Harris County filed the designation of experts, which did not name Garcia in any respect except in the caption of the case, and, again, did not designate the claims against him in his individual (as opposed to

official) capacity. Thus, "Defendants' Joint Designation of Experts" did not constitute an appearance by Garcia in his individual capacity that would waive service of process. *Cf.* Doc. No. 265 *with* Doc. No. 272.

Finally, Plaintiffs do not establish good cause for their failure to serve Garcia in his individual capacity. They were apprised of the error in pleading and service in late July 2017 when Harris County moved to dismiss the official capacity claims, but they did attempt to serve Garcia properly at that time or to amend their complaint to plead individual capacity claims against him. Accordingly, the Court finds that Plaintiffs have failed to meet their burden to establish good cause under Rule 4(m). In addition, as explained below, the Court concludes that permitting service at this stage of the proceedings would be futile and will therefore grant Harris County's motion to dismiss.

### C. Motion to Dismiss for Failure to State a Claim

Harris County additionally argues, among other things, that Plaintiffs have not pleaded facts to state a valid claim for relief against Garcia in his individual capacity and could not overcome qualified immunity, and, therefore, that permitting service of process at this stage would be futile.

At the time Patrick was confined in the Jail, Adrian Garcia was Harris County Sheriff. Plaintiffs do not allege that Sheriff Garcia knew Patrick, that he had any direct personal involvement in Patrick's case, or that he knew that Patrick was sick and did not act. Instead, they allege that Garcia: (1) "was delegated policy making authority for the policies, procedures, rules and training for the Harris County Jail and was under the purview of the Harris County Commissioners Court," SAC ¶ 33; (2) made no change in how healthcare was addressed or ignored at the Harris County Jail after another inmate died in the Jail from medical neglect in

2014, SAC ¶ 50; (3) waited too long to fire Jail medical personnel after a medical neglect incident involving another inmate, SAC ¶ 50, 63; (4) was ultimately responsible for training Jail and medical staff, SAC ¶ 75; and (5) condoned Harris County's policy and practice that resulted in the death of Patrick, SAC ¶ 85. Plaintiffs also generally allege that "[t]he training provided by Harris County and for Harris County in March of 2015 through Michael Seale, M.D. and ultimately Sheriff Adrian Garcia was so inadequate as to constitute a failure to train." SAC ¶ 76.

Only the direct acts or omissions of a government official, not the acts of his subordinates, will give rise to that official's individual liability under § 1983. *See Jones v. Lowndes County, Mississippi*, 678 F.3d 344, 349 (5th Cir. 2012) ("A Section 1983 claimant must 'establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation.'"); *Zarnow v. City of Wichita Falls, Texas*, 614 F.3d 161, 169 (5th Cir. 2010) ("To support a supervisory liability claim, the misconduct of a subordinate must be conclusively linked to the action or inaction of the supervisor."), *cert. denied*, 564 U.S. 1038 (2011). In that respect, section 1983 does not create vicarious or *respondeat superior* liability for the wrongdoing of others. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691-94 (1978) (holding that supervisory officials cannot be held vicariously liable for their subordinates' actions under section 1983); *Iqbal*, 556 U.S. at 677 (2009) ("'[S]upervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.") (citation omitted); *Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999) ("Supervisory officers ... cannot be held liable under § 1983 for the actions of subordinates ... on any theory of vicarious liability."). Because vicarious liability is inapplicable in a section 1983 suit, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has

violated the Constitution." *Iqbal*, 556 U.S. at 676.

Supervisory liability exists without overt personal participation in an offensive act only if the supervisory official implements a policy "so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (citation omitted). To hold a supervisory government official who was not personally involved in the acts causing a constitutional violation liable under section 1983 in his individual capacity, a plaintiff must show that: (1) the supervisor failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights. *See Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005); *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001). Proof of more than a single instance of the lack of training or supervision causing a constitutional violation is usually required before such lack of training constitutes deliberate indifference. *Thompson*, 245 F.3d at 459 (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798-99 (5th Cir. 1998); *Thompkins*, 828 F.2d at 304-05). "The inadequacy of training must be so obvious and obviously likely to result in a constitutional violation." *Id.* (citations omitted).

Harris County contends that Adrian Garcia was sued in his official capacity because nearly all of the allegations regarding policy, practice, and training at the Jail are aimed at Harris County and not at Sheriff Garcia, and all of the allegations against Garcia concern Harris County policies or practices. *See, e.g., Dillon v. Jefferson County Sheriff's Dep't*, 973 F. Supp. 628, 631 (E.D. Tex. 1997) (holding that the *pro se* plaintiff's pleadings indicated an official capacity suit against the sheriff because it did not designate whether he was sued in his official or individual

capacity and the allegations concerned institutional policies and practices).

In addition, when Sheriff Garcia is mentioned a handful of times in the Second Amended Complaint, the allegations against him are conclusory and do not state facts to indicate what he did or what unconstitutional policies he implemented in deliberate indifference to Patrick's constitutional rights. Plaintiffs' allegations that Garcia condoned policies in place, that the training was inadequate, and that he was "ultimately responsible" for the policies or training are the same types of allegations that the Supreme Court rejected in *Iqbal* as conclusory or as sounding in *respondeat superior*. *See Iqbal*, 556 U.S. at 669 (holding that allegations that former United States Attorney General John Ashcroft and then-FBI Director Robert Mueller condoned a policy of discrimination, that Ashcroft was the "principal architect" of such a policy, and that Mueller was "instrumental" in the policy's adoption and execution were conclusory and failed to state a plausible claim for relief against either Ashcroft or Mueller in their individual capacities under section 1983).

Moreover, regarding Plaintiffs' claims that the medical defendants were not properly trained to recognize the signs of bacterial meningitis or to evaluate lab values, Plaintiffs do not allege a single other instance prior to Patrick's case where the medical providers at the Jail were presented with an inmate with acute bacterial meningitis that they treated incorrectly or with deliberate indifference to his health and safety. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011) (holding that "a pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference and rejecting plaintiff's examples of other *Brady* violations because they were not sufficiently similar to the complained-of *Brady* violation in plaintiff's case) (quoting *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)). "Without notice that a course of training is deficient in a particular respect,

decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* Further, Plaintiffs do not plead facts to show that a violation of Patrick's rights would have been the obvious consequence of Garcia failing to provide specific medical training to licensed medical professionals regarding recognizing and treating acute bacterial meningitis. *See id.* at 63-64 (describing "single-incident liability" as rare because it requires that the plaintiff's injury is a "patently obvious" or "highly predictable" result of inadequate training); *see also Thompson*, 245 F.3d at 462 (noting that the sheriff did not have a duty to provide medical training to staff, but only to not have policies in place that preclude serious medical needs from being met).

In sum, the Second Amended Complaint does not allege facts against Sheriff Garcia in his individual capacity to state a plausible claim that he is *personally liable* for the harms alleged. Accordingly, even if Garcia had been served properly or had made an appearance in his individual capacity, Plaintiffs fail to state a claim for which relief may be granted against him in his individual capacity, and those claims are subject to dismissal. Plaintiffs' claims regarding policies and practices at the Jail against Harris County and their individual claims against Michael James Malloy and Warner Dean Irvin remain for adjudication.

### D. Motion to Amend

Plaintiffs have requested leave to serve Garcia in his individual capacity and to amend their complaint to cure the defects in their pleading to clarify that they are suing Adrian Garcia in his individual capacity. Plaintiffs do not attach a proposed amended complaint to their motion to amend or state what other facts they would allege to show that Adrian Garcia is liable in his individual capacity for a violation of Patrick's constitutional rights. They request two more months to conduct discovery on the issue of Garcia's knowledge and for leave to serve him in his

individual capacity. [Doc. No. 273 at 21].

Except as authorized by Rule 15(a)(1), a complaint may be amended only by leave of the district court, and, while such leave is to be freely given when justice so requires, the decision is left to the sound discretion of the district court and will only be reversed on appeal when that discretion has been abused. *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971); *Dunn v. Koehring Co.*, 546 F.2d 1193, 1198 (5th Cir.1977)). In deciding whether to permit an amendment, a district court may consider factors such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, futility of the amendment, or undue prejudice to the opposing party. *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

In its August 13, 2018 Memorandum and Order, the Court conditionally dismissed most of the individual defendants, but granted Plaintiff's motion to amend, allowing leave for the Plaintiffs to re-plead to cure the deficiencies in their pleadings. *See* Doc No. 245 at 21. Plaintiffs did not avail themselves of that opportunity. Discovery has been ongoing in this case for years and is soon coming to a close. Plaintiffs' request to extend the already lengthy discovery period in order to obtain facts to state a plausible claim against Garcia in his individual capacity would result in undue delay of the proceedings that have been underway now for almost three years. Considering the voluminous discovery that has already been produced to date and that Garcia could assert qualified immunity contending that his actions regarding Harris County policies in place at the time were not objectively unreasonable given all of the circumstances, the Court concludes that allowing Plaintiffs to amend now would be futile. Plaintiffs have amended their complaint twice thus far and have filed two civil actions to assert their claims; yet they did

not avail themselves of the opportunity to amend five months ago and do not indicate what facts they would plead to cure the deficiencies in the Second Amended Complaint. *See U.S. ex rel. Adrian v. Regents of Univ. of Cal.*, 363 F.3d 398, 403-04 (5th Cir. 2004) (holding that there was no abuse of discretion where the court denied leave to file a third amended complaint where plaintiff had already been given opportunities to amend and did not indicate what additional facts he could plead to correct the deficiencies in the complaint); *see also Goldstein v. MCI WorldCom*, 340 F.3d 238, 255 (5th Cir. 2003) (finding no abuse of discretion where plaintiff did not proffer a proposed amended complaint and did not suggest any additional facts that could cure the deficiencies in the complaint). Considering the factors set forth in *Foman*, the Court concludes that allowing Plaintiffs to amend at this time: (1) would cause undue delay; (2) would result in substantial prejudice to Garcia to add him at this late date after numerous depositions have been taken and discovery is nearly closed; (3) would be futile because they have had numerous opportunities to amend and do not state what facts they would allege to cure the deficiencies in their complaint; and (4) would disserve the interests of judicial economy. For these reasons, Plaintiffs' request to amend is **DENIED**.

### E. Motion to Quash and for a Protective Order

Plaintiffs passed on the notice of deposition that was at issue in Harris County's motion to quash; therefore, the motion to quash is moot. Harris County seeks a protective order under Rule 26(c) prohibiting Plaintiffs from noticing another deposition to Adrian Garcia until Plaintiffs complete depositions of Harris County's Rule 30(b)(6) witnesses.

Rule 30(b)(6) sets forth the procedure for noticing depositions to an organization such as Harris County as follows:

> In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity

and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

Fed. R. Civ. P. 30. If Plaintiffs want to depose Adrian Garcia on behalf of Harris County, Rule 30(b)(6) governs the procedure to follow.

### IV.     CONCLUSION AND ORDER

Accordingly, the Court **ORDERS** as follows:

1. Defendant Harris County's motion to dismiss [Doc. No. 265] is **GRANTED**, and all claims against Former Sheriff Adrian Garcia are **DISMISSED** without prejudice pursuant to *Kentucky v. Graham*, 473 U.S. 159 (1985), and Federal Rules of Civil Procedure 4(m), 12(b)(5), 12(b)(6), and/or 12(c).

2. Harris County's motion to quash and for a protective order [Doc. No. 266] is **GRANTED in part**, insofar as the parties are **ORDERED** to follow the procedures set forth in Federal Rule of Civil Procedure 30(b)(6) to depose witnesses on behalf of Harris County, and the motion is otherwise **DENIED as MOOT**.

3. Plaintiffs' motion for leave to amend and/or to serve is **DENIED** as futile and for the other reasons set forth in detail above.

4. To the extent such is necessary, any and all remaining motions in *Green v. Garcia*, Civ. A. No. H-17-905 (S.D. Tex. 2017), which has been consolidated into this case and is now closed, are **DENIED as MOOT**.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, this _28th_ day of January, 2019.

                                                ANDREW S. HANEN
                                      UNITED STATES DISTRICT JUDGE